In the Matter of LANCE J. FRIEDSAM, Respondent, v STATE TAX COMMISSION, Appellant.

Third Department, December 15, 1983

**APPEARANCES OF COUNSEL**

*Robert Abrams, Attorney-General* (*Dianne DeFurio Foody* and *William J. Kogan* of counsel), for appellant.

*White & Case* (*Rayner M. Hamilton* and *Stephen M. Piga* of counsel), for respondent.

**OPINION OF THE COURT**

WEISS, J.

In this appeal we are required to determine whether section 632 of the Tax Law, as applied by respondent, violated the privileges and immunities clause of the United States Constitution (art IV, § 2, cl 1) by denying a nonresident petitioner an income tax adjustment for payment of alimony. The facts are undisputed. Petitioner, a Connecticut resident employed in New York State, claimed alimony payments made to his former wife (also a Connecticut resident) as an adjustment to income on his 1979 nonresident tax return. In the due course of its procedures, respondent disallowed the alimony adjustment as a deduc-

tion from taxable income and rejected the argument that its application of section 632 (subd [b], par [1], cl [B]) of the Tax Law was a constitutional violation. Special Term granted petitioner's CPLR article 78 application by annulling the determination, holding that because a resident is allowed alimony paid as an adjustment against income while a nonresident is not, the disparity in treatment without a substantial reason is violative of the privileges and immunities clause in the Federal Constitution (US Const, art IV, § 2, cl 1).

Respondent urges that this court's decision in *Matter of Golden v Tully* (88 AD2d 1058, affd 58 NY2d 1047) should be distinguished because the Court of Appeals affirmance was based upon an "erroneous" admission by the Tax Commission, i.e., "it was admitted that petitioners' nonresidence in 'New York State was determinative of the disallowance of said moving expenses.' No other rationale was then proffered to justify the discrepancy in treating residents and nonresidents" (*Matter of Golden v Tully,* 58 NY2d 1047, 1049, *supra*). Respondent additionally urges distinction because the moving expenses disallowed in *Matter of Golden* are different from alimony in that the latter arises solely from the personal life of the taxpayer. We decline respondent's invitation to depart from our holding in *Matter of Golden* and affirm the judgment annulling respondent's determination.

Initially, it should be noted that the amount paid as alimony was not claimed as a deduction from income in the nature of a business expense or an expense of earning income from other sources. Rather, the alimony paid had already been subtracted from petitioner's Federal gross income as an allowable adjustment on his Federal income tax return for the year 1979 (US Code, tit 26, § 62, subd [13], as added by the Tax Reform Act of 1976). The New York adjusted gross income of a nonresident includes all items of income, gain, loss or deduction which enter into the taxpayer's Federal adjusted gross income, limited, however, to those items derived from or connected with New York sources (Tax Law, § 632, subd [a], par [1]). Subdivision (b) of the same section defines income and deductions as "(1) Items of income, gain, loss and deduction

derived from or connected with New York sources shall be those items attributable to * * * (B) a business, trade, profession or occupation carried on in this state". Respondent's reason for disallowance of the alimony paid was "[t]hat alimony is not a deduction attributable to petitioner's profession carried on in this state, within the meaning of section' 632 (b) (1) (B) of the Tax Law. See *Matter of Daniel C. Maclean,* New York State Tax Commission, May 15, 1981".

Respondent contends that, unlike *Matter of Golden v Tully (supra),* a valid and substantial reason for disparity in tax treatment between residents and nonresidents has been furnished which satisfies the "substantial reason" test evolved in *Toomer v Witsell* (334 US 385) and applied by this court in *Matter of Goodwin v State Tax Comm.* (286 App Div 694, 701, affd 1 NY2d 680, app dsmd 352 US 805). Respondent asserts that the determination is correct by contending that alimony payments are purely personal in nature and, as such, are related solely to a nonresident's State; ergo, it is not violative of the privileges and immunities clause to permit deduction by a resident but prohibit the same deduction for a nonresident. We disagree and, in so holding, find neither a State governmental policy expressing a reason for the disparity in treatment accorded nonresidents, nor any showing that the factor of residence has a legitimate connection with the allowance of the deduction (see *Matter of Golden v Tully, supra,* p 1059). Respondent has simply asserted that alimony payments are purely personal in nature and not related to income producing activities in New York, and are thus nondeductible.

The policy behind the Federal statutory provision relating to taxing of alimony is, at best, that there be uniformity of tax treatment for situations arising in the various States and that the tax fall upon those who receive the income and benefit therefrom *(Porter v Commissioner of Internal Revenue,* 388 F2d 670; *Bardwell v Commissioner of Internal Revenue,* 318 F2d 786, 789; see US Code, tit 26, §§ 71, 215). The absence of New York policy behind allowance of the alimony deduction solely to residents, and the failure to relate the deduction to New York residency only,

requires us to hold that no substantial reason for disparate treatment between residents and nonresidents exists. To be valid, the discrimination must bear a "substantial relationship" to the reason given (see *Zobel v Williams,* 457 US 55, 76; *Hicklin v Orbeck,* 437 US 518, 525-526). Under respondent's interpretation, it makes no difference where an alimony recipient lives, where the marriage and divorce took place, where the awarding divorce court was situated, or whether the recipient is taxed by New York. The only criterion is whether the payor is a resident or nonresident. Without more, there results a constitutional violation which we may not condone (*Toomer v Witsell, supra; Matter of Golden v Tully, supra*).

The judgment should be affirmed, with costs.

LEVINE, J. (dissenting). I respectfully dissent. The majority, in further extending its holding in *Matter of Golden v Tully* (88 AD2d 1058, affd 58 NY2d 1047), effectively overrules *Matter of Goodwin v State Tax Comm.* (286 App Div 694, affd 1 NY2d 680, app dsmd 352 US 805) and with it casts into serious doubt the standing policy of this State since the Income Tax Law of 1919 (L 1919, ch 627) with respect to the taxation of the New York income of nonresidents. That policy has been to limit the ability of out-of-staters to take full advantage of deductions available to State residents as to expenses unrelated to the production of New York income. This policy is a corollary to this State's inability to tax non-New York income of nonresidents, as it does with its own citizens. In *Goodwin,* a New Jersey taxpayer challenged the disallowance of real estate taxes paid on his residence, interest payments, medical expenses and insurance premiums, all of which could have been subtracted from the gross income of a New York resident for tax purposes.* *Toomer v Witsell* (334 US 385) had already been decided as the leading case interpreting the privileges and immunities clause (US Const, art IV, § 2, cl 1). Responding to the Supreme Court's holding in that case that disparity in tax treatment between residents

---

* When *Goodwin* was decided, disallowance of all such expenses was absolute. Presently, by statute there is still total disallowance of such expenses, including alimony payments, as adjustments to New York gross income (Tax Law, § 632, subd [a], par [1]) but partial allowance of such expenses as itemized deductions (Tax Law, § 635, subd [c], par [1]).

and nonresidents is not invalid "in the many situations where there are perfectly valid independent reasons for it" (*Toomer v Witsell, supra,* p 396), this court in *Goodwin* gave three distinct, alternative rationales to uphold the statutory disallowance of deductions for such expenses on the part of a nonresident, each of which was held to be sufficient. The first of these reasons to permit favoring New York residents regarding deductions was that they were subject to an offsetting burden in being taxed on *all* sources of income, not just on their New York sources, as in the case of a nonresident taxpayer (*Matter of Goodwin v State Tax Comm., supra,* pp 696-698, citing *Travis v Yale & Towne Mfg. Co.,* 252 US 60, and *Shaffer v Carter,* 252 US 37). The second justification was based upon the locus of the activity of the taxpayer giving rise to the expense for which the deduction was sought. The court held that it was sufficient that the deductions claimed were non-business-related, personal expenses of the taxpayer and, as such: "are clearly a part of the petitioner's personal activities in his home State * * * If these expenditures are to be allowed as deductions at all, they should be allowed by the State of the taxpayer's residence" (286 App Div, at p 701). Finally, *Goodwin* (at p 702) vindicated the disparity in treatment on the basis that deductions for certain personal (in contrast to business-related) expenses reflect State social policy "peculiarly related to * * * residence" to encourage its citizens to engage in the activities giving rise to such expenses. "In the exercise of its general governmental power to advance the welfare of its residents, the State may give aid or encouragement of the character embodied in the tax deductions to its own residents, without being constitutionally required to extend similar aid or encouragement to the residents of other States" (286 App Div, at p 702).

This court, in *Matter of Golden v Tully (supra),* dealt with the disparity in treatment between residents and nonresidents regarding the moving expense adjustment to gross income. It purported to follow *Goodwin (supra),* but actually focused exclusively on the third of the three *Goodwin* rationales for sustaining disparity of treatment on deductions for various expenses. In *Matter of Golden v*

*Tully* (*supra*), it was held that for a State validly to differentiate between residents and nonresidents, *in all cases,* there must be an identified social purpose connected with the deduction and that purpose must relate to residence. Obviously, since allowance of a deduction for the expense of moving out of the State could not be shown to relate to any social policy connected to the fact of intrastate residence, the court held that the disparity in treatment was constitutionally defective.

The Court of Appeals affirmance in *Golden* (*supra*) was not based upon this court's restricted application of *Goodwin* (*supra*). Instead, the disallowance of the nonresident's moving expenses was struck on the narrow ground that, because the Tax Commission in its answer and bill of particulars had proffered "[n]o other rationale [than nonresidence] * * * to justify the discrepancy in treating residents and nonresidents * * * it must be concluded that, in the present matter, respondent's determination unconstitutionally discriminated against the nonresident taxpayers" (*Matter of Golden v Tully,* 58 NY2d 1047, 1049).

In my view, then, *Matter of Golden v Tully* (*supra*), as finally decided, does not impliedly overrule the *Goodwin* case, as suggested by petitioner's counsel on the oral argument of the instant appeal. Thus, it remains appropriate to test the discriminatory tax treatment as to alimony payments involved here on the basis of each of the three grounds invoked in *Goodwin* for upholding a similar disparity. Applying each of the *Goodwin* rationales to the instant case, I have no difficulty in sustaining the Tax Commission's determination. Just as in *Goodwin,* the tax advantage given a New Yorker paying alimony is offset by the additional burden of his being taxed on all, and not merely New York, sources of income. The second of the *Goodwin* grounds for sustaining the disparity in tax treatment also applies. Certainly it cannot be denied that petitioner's alimony obligation arose totally from activities in Connecticut, which was the locus of his marriage, was and is his State of residence and that of his ex-wife, and was the forum State for his divorce. Thus, the alimony deduction, if any, should be allowed in Connecticut and there is nothing to "warrant the petitioner's shifting the

allowance for these expenditures, which are intimately connected with the State of his residence, to New York State" (*Matter of Goodwin v State Tax Comm., supra*, p 701).

Finally, I differ with the majority's view that the discrepancy in tax treatment cannot be justified on a residence-related social policy basis, the third, but not exclusive, *Goodwin* ground. It can be safely assumed, in the absence of evidence to the contrary, that in the vast majority of instances of New York residents claiming an allowance for alimony payments, the obligation arose in the context of a New York marriage and both parties have remained domiciled here. Thus, this State should be able validly to classify alimony payments for tax purposes in a manner which generally has the effect of furthering the sound policy objective of rewarding its residents for fulfilling their New York marital obligations. The mere possibility that such a residence-related social policy may not apply in some individual cases where the alimony adjustments may be allowed (e.g., because the alimony recipient lives elsewhere) is not sufficient to invalidate the statutory tax scheme. It is well established that the States are given a wide latitude in making classifications for tax purposes (*Austin v New Hampshire*, 420 US 656, 661). So long as there is not an invidious discrimination, the validity of the tax in its general application is sufficient to sustain it (*Lehnhausen v Lake Shore Auto Parts Co.*, 410 US 356, 359-360; *Travellers' Ins. Co. v Connecticut*, 185 US 364, 371-372).

For the foregoing reasons, I would reverse Special Term and dismiss the petition.

SWEENEY, J. P., KANE and CASEY, JJ., concur with WEISS, J.; LEVINE, J., dissents and votes to reverse in a separate opinion.

Judgment affirmed, with costs.